# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIANNE SADELMYER, | ) |
| Plaintiff, | ) Civil Action No. 2: 12-cv-1785 |
| v. | ) |
| WARDEN J. PELTZER, DEPUTY WARDEN TEAMUS, FACILITY DOCTOR ISLEY, M.D., LEVERNE ROSSI, FACILITY NURSE, AND SERGEANT CHIPPS, | ) United States Magistrate Judge ) Cynthia Reed Eddy |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

Presently pending is the "Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) In The Form of a Motion for Summary Judgment," with brief in support, filed by Defendants Warden J. Peltzer, Deputy Warden Teamus, Leverne Rossi, Facility Nurse, and Sergeant Chipps (ECF Nos. 45 and 46) and the Opposition filed by Plaintiff (ECF No. 50).

The issues have been fully briefed and the factual record has been developed. *See* ECF Nos. 47 and 48. After careful consideration of the motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Court finds that the motion should be granted in part and denied in part.[1]

---

[1] The parties have consented to jurisdiction by the undersigned Magistrate Judge. *See* ECF Nos. 1-4; 13; and 28.

## Factual Background

Plaintiff, Marianne Sadelmyer, is a prisoner currently incarcerated at Albion Correctional Facility, in Albion, New York. This matter involves events that purportedly transpired from August 17, 2012, through October 3, 2012, during the forty-eight (48) days that Plaintiff was confined at Washington County Correctional Facility (the "Correctional Facility"). Complaint at ¶ 1. From August 17, 2012, through September 25, 2012, Plaintiff was confined as a pretrial detainee; on September 26, 2012, however, Plaintiff's status changed to that of a convicted prisoner as she was sentenced to a two (2) year term of probation on that date. She remained in the Correctional Facility until October 3, 2012, at which time she was released to the New York State Police for extradition to New York.[2]

Plaintiff initiated this action on December 7, 2012, by the filing of a Motion for Leave to Proceed in forma pauperis. The motion was granted and the Complaint was filed. (ECF No. 7.) Named as Defendants are Warden J. Peltzer (now the former Warden), Deputy Warden Teamus (now the current Warden), Laverne Rossi, Facility Nurse (name incorrectly spelled in case caption), Sergeant Eli Chipps (hereinafter collectively referred to as the "County Defendants")

---

[2] Based on the Court's review of The Unified Judicial System of Pennsylvania Web Portal, Plaintiff was arrested by the Canonsburg Police on August 17, 2012, and charged with identity theft; unauthorized use of access device, forgery, theft by deception - false impression; theft by unlawful taking - movable property; and false identification to a law enforcement officer. On September 26, 2012, Plaintiff pled guilty to the unauthorized use of access device charge and was sentenced to two (2) years of probation. The remainder of the charges against her were nolle prossed on that day. http://ujsportal.pacourts.us/DocketSheets/CommonPleasDocket Sheets/CPReport.ashx?DocketNumber=CP-63-CR-002149-2012. Plaintiff remained in the Washington County Correctional Facility until she was extradited to New York on October 3, 2012.

and Matthew Eisley, M.D., a facility doctor (named incorrectly spelled in case caption).³ The Complaint does not indicate whether Plaintiff is suing the County Defendants in their individual or official capacities, or both. For purposes of this Opinion only, the Court will assume that Defendants have been named in both their official and individual capacities.

Plaintiff arrived at the Correctional Facility on August 17, 2012, at which time a Nursing Intake Assessment was conducted. Plaintiff reported having hip replacement surgery nine and a half weeks prior and "reported having a fractured pelvis and broken wrists." Affidavit of Autumn Loghman, LPN (ECF No. 48-6, ¶ 8.) Plaintiff was assigned a Medical Clinic Handicap cell because she required the use of aluminum braces on both of her arms. During the early morning hours of August 18, 2012, the nursing staff was advised that Plaintiff had fallen and was complaining of left hip pain. She was transported to Washington Hospital for evaluation. She was discharged from Washington Hospital on the same day with a diagnosis of hip contusion, depression, and anxiety. She was to have a follow up with Family Medicine and a psychiatry consultation. *Id.*

Later that evening, Plaintiff was discovered hanging from the air vent in an apparent suicide attempt. She was placed on the floor, her vital signs were taken and were noted to be stable. It was determined that Plaintiff did not require any medical treatment. She was transferred to Processing Cell No. 2, where she remained until she was transferred back to the

---

³ Defendant Eisley filed a separate Motion to Dismiss (ECF No. 40), which was granted in part and denied in part. (ECF No. 43.) The Motion was denied as to Plaintiff's claim of deliberate indifference and granted as to Plaintiff's Fourteenth Amendment claim.

Medical Clinic on August 29, 2012. Plaintiff remained in the Medical Clinic until she was released to the New York State police.

Plaintiff alleges that during her time at the Correctional Facility, the County Defendants (i) subjected her to unsanitary prison conditions; (ii) were deliberately indifferent to her serious medical needs; and (iii) discriminated against her in violation of the Americans with Disabilities Act ("ADA").

The County Defendants filed the instant Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) In the Form of a Motion for Summary Judgment. (ECF No. 45). The Court advised the parties that the pending motion would be converted into a motion for summary judgment under Federal Rule of Civil Procedure 56 and that the motion would be evaluated under the standard set forth in Rule 56 of the Federal Rules of Civil Procedure. Plaintiff was further advised that she must comply with Local Rule 56.C by filing a brief in response, concise counter statement of facts and any appendix. (Order of October 17, 2013, ECF No. 49). In response to the motion for summary judgment, Plaintiff filed a "Response to Defendants Motion for Summary Judgement In the Form of a Sworn Affidavit." (ECF No. 46.) For the reasons that follow, the motion will be granted in part and denied in part.

### STANDARD OF REVIEW

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any

element to that party's case and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of material fact. *National State Bank v. Federal Reserve Bank of New York*, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting *Anderson*, 477 U.S. at 251–52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. *Anderson*, 477 U.S. at 249–50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* Fed.R.Civ.P. 56(c); *Celotex*, 477 U.S. at 324.

## Discussion

1. *Claim of Unsanitary Conditions of Confinement*

Plaintiff alleges without any specificity that she was "exposed to other person's body fluids." Complaint at IV.C.1, 2 and 5. The County Defendants have provided record evidence

5

that only on two occasions did Plaintiff complain of unsanitary conditions in her cell.

First, the summary judgment record evidence reflects that on August 24, 2012, while housed in Processing Cell No. 2, Plaintiff filed a "Formal Inmate Grievance," in which she stated that "Today while on the toilet something hit my leg. It was a bloody tampon from another inmate. The toilet sends feces, urine, vomit and now tampons up into other cells." (ECF No. 48-1, at 3.) According to the Affidavit of Sergeant Eli Chipps, he was on duty that day and Plaintiff reported the incident to him. When Defendant Chipps asked Plaintiff to show him the tampon, she claimed that she had flushed the tampon down the toilet. He looked in her toilet and saw nothing. Defendant Chipps also noted that there were no problems with any of the toilets in the processing area. In an abundance of caution, Plaintiff was permitted to shower. Defendant Chipps also provided Plaintiff with a Grievance form, which she completed.

Defendants also have submitted the Affidavit of Officer Ray Prevost, a Maintenance Officer for the Correctional Facility. In his Affidavit, Officer Prevost describes the construction of the drains, which contain baffles or steel bolts that extend through the drain pipes so that large objects cannot be flushed down the toilets.(ECF No.48-2, ¶¶ 8, 12.) Officer Prevost explains in his Affidavit that in order for the water to rise high enough in any toilet to touch the person sitting on it, all of the toilets on the floor would have to be flooding. *Id*. at ¶ 13.

Second, the summary judgment record evidence reflects that on a date not given, while Plaintiff was housed in the Medical Center, she told Officer Prevost that she had noticed a "turd" in her toilet that came from another cell. Officer Prevost inspected the toilet, saw nothing, and noted that the toilet flushed normally.

6

Plaintiff alleges inaccuracies in both Affidavits. She claims that Officer Chipps never entered her cell and that he told her "that the entire building had the problem of one toilet flushing comming (sic) into the connected cells." (ECF No. 50.) She also contends that she had "a very short and to the point conversation" with Officer Prevost, in which he told her that "the only way to fix it [her toilet] would be to gut the building." *Id.*

At the time of the first incident, Plaintiff was a pretrial detainee. Therefore, the protection of the Due Process Clause of the Fourteenth Amendment applies to this incident. However, it is not clear from the summary judgment record evidence whether Plaintiff was a pretrial detainee or a convicted prisoner at the time of her second complaint. Thus, it is also not clear whether the protection of the Cruel and Unusual Punishment Clause of the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment applies to her second report of unsanitary conditions.[4] *See Hubbard v. Taylor,* 399 F.3d 150, 164 (3d Cir. 2005) (*Hubbard I*) (stating that claims that arose while a plaintiff was a pretrial detainee must be prosecuted under the Due Process Clause, while claims that arose after he was sentenced are analyzed under the Cruel and

---

[4]  The Eighth Amendment "was designed to protect those convicted of crimes and consequently the Clause applies only after the State has complied with constitutional guarantees traditionally associated with criminal prosecutions." *Whitley v. Albers,* 475 U.S. 312, 318 (1986) (citation and internal quotations omitted). Thus, the Eighth Amendment's Cruel and Unusual Punishment Clause does not apply until "after sentence and conviction." *Graham v. Connor,* 490 U.S. 386, 392 at n.6 (1989). It imposes a duty on prison officials to provide "humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In *Wilson v. Seiter*, 501 U.S. 294 (1991), the United States Supreme Court set forth the standard for alleged violations of the Eighth Amendment while addressing non-medical conditions of confinement. The Court held that the prisoner must prove that prison officials acted with deliberate indifference that deprived him of ' "the minimal civilized measure of life's necessities.' " *Id.* at 298–99 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Unusual Punishment Clause). While recognizing that the case law is unclear as to whether the Fourteenth Amendment provides more measure of additional protections for pretrial detainees above what the Eighth Amendment affords convicted prisoners,[5] the Court, in an abundance of caution, will analyze both of these claims under the Due Process Clause because the Court of Appeals for the Third Circuit has hinted that a pretrial detainee's "due process rights are at least as broad, if not broader, than his rights under the Eighth Amendment." *Tapp v. Proto*, 404 F. App'x 563, 566 (3d Cir. 2010) (citing *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2010)).[6]

Under the Fourteenth Amendment, when a pretrial detainee complains about the conditions of her confinement, courts are to consider whether the conditions "amount to punishment prior to an adjudication of guilt in accordance with law." *Hubbard I*, 399 F.3d at 158. The Fourteenth Amendment standard of unconstitutional punishment, like the Eighth Amendment's cruel and unusual punishment standard, contains both an objective component and a subjective component:

---

[5] The standard to apply when evaluating conditions of confinement imposed on pretrial detainees is not clear and has been the subject of recent scholarly debate. Catherine T. Starve, The Conditions of Pretrial Detention, 161 U. Pa. L.Rev. 1009 (2013). However, the United States Supreme Court and the Court of Appeals for the Third Circuit have unequivocally held that the Fourteenth Amendment due process standard is at least as protective as the Eighth Amendment cruel and unusual punishment standard when analyzing conditions of confinement. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979) ("pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners"); *Stevenson v. Carroll*, 495 F.3d 62, 70 (3d Cir. 2007) ("the protections due to sentenced inmates provide a floor for what pretrial detainees may expect").

[6] The Court notes that Defendants analyzed both claims under Eighth Amendment standards. Even if the Court were to analyze the claims under the Eighth Amendment, the conclusion would be the same. Plaintiff has failed to establish a constitutional violation with regard to her alleged unsanitary conditions of confinement claim.

> Unconstitutional punishment typically includes both objective and subjective components. As the Supreme Court explained in *Wilson v. Seiter,* 501 U.S. 294 . . . (1991), the objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind [.]" *Id.* at 298. . . . The Supreme Court did not abandon this bipartite analysis in *Bell*, but rather allowed for an inference of mens rea where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective.

*Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).

The Court finds that Plaintiff has not met the objective component necessary to establish a Due Process violation. Plaintiff's complaints are limited to an alleged exposure to unsanitary material on two isolated occasions. There is no evidence of the length of time of such exposure, that the cell flooded, or that the cell Plaintiff was housed in was in any way unsanitary. The Court concludes that the summary judgment record is void of any evidence which establishes that Plaintiff was subjected to genuine privations and hardship over an extended period of time. *See Hutto v. Finney*, 437 U.S. 678, 686–87 (1978) ("the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of 'gruel' might be tolerable for a few days and intolerably cruel for weeks or months"); *Hubbard v. Taylor*, 538 F.3d 229, 235 (3d Cir. 2008) ("*Hubbard* II") (holding that triple celling of pretrial detainees and use of floor mattresses did not violate Due Process because the inmates "were not subjected to genuine privations and hardship over an extended period of time"); *Piskanin v. Hammer*, 269 F. App'x 159, 162–63 (3d Cir. 2008) (placement of pretrial detainee on suicide watch for brief six day period, during which time he could not contact counsel or file a habeas petition, did not amount to punishment prior to adjudication of guilt).

Thus, the Court finds that there is insufficient evidence to enable a jury to reasonably find for Plaintiff on her conditions of confinement claim. Therefore, summary judgment will be granted to the County Defendants on this claim.

2. *Claim for Medical Indifference*[7]

In accordance with the Eighth Amendment's prohibition against cruel and unusual punishment, the government is obliged "to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 103 (1976). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Id.* at 104 (citation omitted). "[W]hether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed . . . deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 104–05 (citations omitted).

A medical need is "serious" if "it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326,

---

[7] For purposes of analyzing Plaintiff's medical indifference claim, the legal analysis is the same whether Plaintiff was a pretrial detainee or a convicted person. The United States Court of Appeals for the Third Circuit has indicated that a pretrial detainee's right to adequate medical care should be analyzed under the well-settled standard established in *Estelle v. Gamble,* 429 U.S. 97 (1976), which provides that prison officials are required "to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle,* 429 U.S. 97 (1976)).

347 (3d Cir. 1987) (internal quotation omitted). "The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment." *Id.*

The "deliberate indifference" a plaintiff must allege lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other" and is frequently equated with recklessness as that term is defined in criminal law. *Farmer v. Brennan,* 511 U.S. 825, 836–37 (1994). This standard "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients." *Inmates of Allegheny Cnty. Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979). Where a prisoner has received medical care and only the adequacy of the treatment is disputed, courts are often reluctant to second guess professional medical judgment. *See id*.

However, deliberate indifference can be manifested by an intentional refusal to provide care, delayed medical treatment, and the denial of prescribed medical treatment. *See Durmer,* 991 F.2d at 64; *Giles v. Kearney,* 571 F.3d 318, 330 (3d Cir. 2009) ("Deliberate indifference may be shown by intentionally denying or delaying medical care.").

Plaintiff contends that the County Defendants were deliberately indifferent to her serious medical needs. Specifically, she contends that (i) she was required to sleep without a mattress despite her alleged hip surgeries, (ii) she was not seen by a doctor until eleven (11) days after her suicide attempt; and (iii) she was neither treated for Xanax withdrawal, which can cause suicidal thoughts and actions, nor was she weaned from Fentanyl, which has serious medical consequences when not weaned from the system.

The County Defendants argue that Plaintiff did not have a serious medical need and, assuming *arguendo* that she did, they were not deliberately indifferent to her medical needs. In the alternative, the County Defendants argue that summary judgment is proper in their favor on the basis of qualified immunity. The County Defendants contend that "a review of the medical records reflects that Plaintiff did not have a serious medical condition" and that "every time she issues a complaint, the staff at the Facility addressed her complaints and provided her with medical treatment." (ECF No. 46 at 9 -11.) Additionally, the County Defendants contend that "there is no evidence that Defendants were not justified in believing that Plaintiff was in capable hands when being treated by the physicians in this matter." *Id.* at 11.[8] In support of their position, the County Defendants attach the Affidavits of Cheryl McGavitt, RN; LaVerne Rossi, LPN; and Autumn Loughman, LPN.

Plaintiff responds that there are a number of inaccuracies in the Affidavits. For example, the Affidavit of Autumn Loughman reflects that Plaintiff was seen by a psychiatrist on August 23, 2012; Plaintiff refutes that statement and states that she was not seen after her suicide attempt "by any doctor until September 20, 2012." Compare ECF No. 48-6, ¶ 14 with ECF No. 50 at 4. Plaintiff also contends that statements in Cheryl McGavitt's Affidavit are "contradicted by the fact that Plaintiff's Pharmacy records are in Plaintiff's medical chart . . . and in the actual Medical notes." ECF No. 50 at 3.

---

[8] The Court of Appeals for the Third Circuit has held that "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir.2004). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth

Unfortunately, Plaintiff's medical records were not attached to any of the Affidavits filed by the County Defendants. The Court finds that Plaintiff's medical records are relevant to the County Defendants' claim that Plaintiff received proper care and that a determination on this issue cannot be made until the Court has had an opportunity to review these medical records. On the record before it, the motion for summary judgment as it pertains to Plaintiff's claims that Defendants were deliberately indifferent to her medical needs is denied without prejudice.

While Plaintiff contradicts the statements about her medical care, she does not contradict statements in the Affidavits that she was never required to sleep on a cement floor and that she was provided with a mattress / pillow combination bedding or a separate mattress and pillow at every location where she was housed in the Correctional Facility. ECF No. 48-3, ¶ 14; ECF No. 48-4, ¶ 7. Thus, the County Defendants are entitled to summary judgment on Plaintiff's claims that she was required to sleep without a mattress.

3. *The ADA Claim*

The County Defendants argue that the ADA claim brought against them in their individual capacities is not cognizable under the ADA. The Court of Appeals for the Third Circuit has stated in dicta that individual liability is not available for discrimination claims brought under Title I or Title II of the ADA. *See Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) ("there appears to be no individual liability for damages under Title I of the ADA"); *Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002) (suggesting in dicta that "individuals are not liable under Titles I and II of the ADA") (citing *Garcia v. S.U.N.Y.*

---

Amendment scienter requirement of deliberate indifference." *Id*.

*Health Sciences Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) (holding Title II does not allow suits against individuals)). Therefore, Plaintiff's ADA claim will be dismissed as to all defendants to the extent that she brings her claim against them in their individual capacities.

To establish a claim for relief under Title II of the ADA, an inmate must allege that: (1) she is a qualified individual with a disability; (2) she was either excluded from participation in or denied benefits of some public entity's services, programs, or activities, or was subject to discrimination by a public entity; and (3) such exclusion, denial of benefits, or discrimination was "by reason of" her disability. *See* 42 U.S.C. § 12132.

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . " 42 U.S.C. § 12102(1). Not every physical or mental impairment or medical condition qualifies as a disability for purposes of the ADA. The impairment or impairments in question must also "substantially limit[ ] one or more major life activities." 42 U.S.C. § 12102(1)(A). "Major life activities" include, but are not limited to: "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Major life activities also include the operation of major bodily functions such as: "functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2)(B).

In her Complaint, Plaintiff alleges that Defendants discriminated against her in violation of the ADA when they (i) denied her access to "church;" (ii) denied her access to the commissary; (iii) denied her access to the library; and (iv) denied her access to the law library. Plaintiff's allegations will be addressed seriatim.

At the outset, the Court finds that Plaintiff has not established she is a "disabled" person protected by the ADA. She has not established (i) that she has a physical or mental impairment that substantially limits one or more major life activities; or (ii) that she has a record of a physical or mental impairment that substantially limits one or more of her major life activities; or (iii) that she is "regarded" as having such an impairment. 28 CFR § 35.104.

Even assuming *arguendo* that Plaintiff was a "qualified individual with a disability," she has failed to identify any discrimination she has suffered, or program, service, activity or benefit from which she has been excluded or which she has been denied "because of" her alleged disability.

First, Plaintiff alleges she was denied access to "church." In response to her allegation, the County Defendants have submitted the Affidavit of Deputy Warden Edward Strawn. In his Affidavit, Deputy Warden Strawn explains that the Correctional Facility has no "designated Chapel," but that there are locations within the facility for conducting religious services. (ECF No. 48-5, ¶ 4.) Additionally, the Correctional Facility is commonly visited by Chaplains and has a Chaplain on staff. According to the Correctional Facility's records, Plaintiff never requested to be seen by the Chaplain. Plaintiff does not contest that the Correctional Facility does not have a

designated Chapel or that she never requested to be seen by the Chaplain. Therefore, the Court finds that this claim has no merit.

Next, Plaintiff alleges that while she was housed in the Medical Clinic, she was denied access to the commissary and was not permitted to purchase items from a cart, such as cookies, candy, and other types of snacks. In response, Deputy Warden Strawn explains that it is the policy of the Correctional Facility that any inmate housed in the Medical Clinic does not have commissary privileges. *Id*. at ¶ 14. Deputy Warden Strawn has articulated two penological reasons for denying inmates housed in the Medical Clinic access to the commissary: (1) the need to limit the Medical Unit to only inmates who have significant medical needs and (2) to prevent inmates in the Medical Unit from obtaining certain foods that could be contraindicated by their medical diagnosis and which could cause further medical problems. *Id*. at ¶¶ 14-20. Plaintiff has the burden of proving that the regulation at issue is unreasonable and not rationally related to the furtherance of a legitimate governmental interest. *Jewell v. Gonzales*, 420 F. Supp.2d 406, 430 (W.D.Pa. 2006). Plaintiff has not disputed that the Correctional Facility has a legitimate interest in advancing its stated penological goals. Accordingly, the Court finds this claim has no merit.

Third, Plaintiff complains that she was denied access to the library. According to Deputy Warden Strawn, the Correctional Facility does not maintain any type of a library. *Id*. at ¶ 7. Plaintiff does not dispute that the Correctional Facility does not have a library. Accordingly, the Court finds this claim has no merit.

Plaintiff's last complaint is that she was denied access to the law library. Because the Correctional Facility does not maintain a law library, upon request, the Correctional Facility will

provide any inmate with access to Lexis legal research, which is gained through computers which are on carts and can be wheeled to the inmate if the inmate is housed in the Medical Unit. *Id*. at ¶ 8. Fatal to Plaintiff's claim is that the records from the Correctional Facility do not reflect that Plaintiff ever requested access to the Lexis computer and Plaintiff does not dispute the County Defendants' position that she never requested access to the Lexis computer. Accordingly, the Court finds that this claim is without merit.

In sum, the Court finds that, after reviewing the summary judgment record evidence, there is no factual basis under which Plaintiff can prove discrimination under the ADA. Therefore, Defendants are entitled to summary judgment on Plaintiff's claims based upon the ADA.

CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by the County Defendants will be granted in part and denied in part. An appropriate Order follows.

**ORDER**

**AND NOW**, this 14th day of April, 2014, IT IS HEREBY **ORDERED** that the Motion is **GRANTED IN PART AND DENIED IN PART** as follows:

1. The Motion is **GRANTED** as to Plaintiff's claim regarding unsanitary conditions of confinement;

2. The Motion is **DENIED** without prejudice as to Plaintiff's claim of medical deliberate indifference under the Eighth Amendment, with the exception that Plaintiff's claim that she was required to sleep without a mattress is dismissed; and

3. The Motion is **GRANTED** as to Plaintiff's claims based upon the American with Disabilities Act.

It is **FURTHER ORDERED** that the County Defendants shall file an Answer in accordance with Federal Rule of Civil Procedure 12(a)(4)(A).

*s/ Cynthia Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge

cc: MARIANNE SADELMYER
13G298
Albion Correctional Facility
3595 State School Road
Albion, NY 14411-9399

Paul D. Krepps
Marshall, Dennehey, Warner, Coleman & Goggin
Email: pdkrepps@mdwcg.com

Jason J. Zivkovic
Dickie, McCamey & Chilcote, PC
Email: jzivkovic@dmclaw.com

Katie M. Mills
Dickie, McCamey & Chilcote, PC
Email: kmills@dmclaw.com